IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARLENE HARJO,

      Plaintiff,

v.                                                                                                            CIV 16-1113 JB/JHR

CITY OF ALBUQUERQUE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Compel Discovery, filed on June 7, 2017 (the "Motion"). (Doc. 45). The Court has considered the Motion and its attached exhibits, Defendant City of Albuquerque's Response in Opposition to Plaintiff's Motion to Compel Discovery, filed on June 21, 2017 (Doc. 47), and Plaintiff's Reply in Support of Plaintiff's Motion to Compel Discovery, filed on July 5, 2017. (Doc. 49). Having thoroughly considered the parties' submissions and the relevant law, the Court finds that the Motion is well taken and should be granted.

### BACKGROUND

This case was removed from a state court case in which Plaintiff Arlene Harjo alleges that Defendant City of Albuquerque wrongfully seized her two-year-old silver Nissan Versa that she had allowed her son to borrow when he was arrested for drinking and driving in her car. (Doc. 1-1 at ¶ 2). Harjo challenges the City of Albuquerque's vehicle forfeiture program, which "generates revenue both through auctions of forfeited vehicles and through settlement agreements whereby property owners agree to make monetary payments to avoid the forfeiture of their vehicles." *Id.* at ¶ 13. Harjo further alleges that prior to an administrative hearing on the

1

civil forfeiture, the property owner meets with a city attorney to attempt to settle the case by immobilizing the car for a period of time and paying hundreds, or thousands, of dollars to the City for its return. *Id.* at ¶ 23. Harjo also alleges that Defendant's policies create a profit incentive for city attorneys to wrongfully hold and retain vehicles seized pursuant to the vehicle forfeiture program. *Id.* at ¶ 79.

After the parties filed amended pleadings and a scheduling order was set, Harjo and the City engaged in discovery. (Docs. 17, 29, 31, 32, 33, 34, 38, 41, 42, 43). The parties have also cross filed dispositive motions, with the City of Albuquerque filing a Motion for Judgment on the Pleadings on June 5, 2017 (Doc. 44), which was granted in part and denied in part on March 30, 2018 (Doc. 92), and Harjo filing a pending Motion for Partial Summary Judgment on October 16, 2017. (Doc. 67). On June 7, 2017, Harjo also filed a Motion to Compel Discovery. (Doc. 45). She only seeks one document: a settlement matrix that is utilized by city attorneys when negotiating with persons whose vehicles have been seized, which was withheld by the City on the grounds of attorney-client privilege and the work product doctrine. (Doc. 45 at 1). The document allegedly "recommends different settlement offers in civil forfeiture cases based on a range of possible factual circumstances," and is "relevant to Plaintiff's constitutional challenge to the City's civil forfeiture program." *Id.*

On June 21, 2017, the City of Albuquerque filed its Response in Opposition to Plaintiff's Motion to Compel Discovery. (Doc. 47). The City responds that the document, as described in its privilege log, is actually entitled "Administrative Hearing Matrix – Approved settlement offers for various circumstances for seized vehicles." (*Id.* at 2). The City asserts that "the matrix was prepared by an attorney giving legal advice to the City staff involved in prosecuting forfeiture actions about current and/or future litigation, which includes the settlement of such litigation."

*Id.* at 2-3. Therefore, the City argues, the matrix is privileged from discovery under the work product doctrine. *Id.* at 8. In the alternative, the City argues that the matrix is subject to attorney-client privilege "if the City or City staff sought legal advice from the City Attorney's Office in connection with forfeiture hearings and the settlement of forfeiture litigation and the hearing matrix was generated as a result." (Doc. 47 at 10). In addition, the City argues that the settlement matrix is not relevant to Harjo's claims, and she can obtain the information within it by other means. *Id.* at 8-9. Harjo filed her reply in support of the Motion to Compel on July 5, 2017, in which she reiterates that the document in question is a policy document rather than a document "that threatens to reveal an attorney's thoughts or impressions about a particular case or legal issue." (Doc. 49 at 2). She further argues that she has a substantial need for the document and cannot obtain the information by other means. *Id.* at 8-9. She also argues that the settlement matrix is not attorney-client privileged because the City had not met its burden of showing that the primary purpose of the communication within the settlement matrix was to obtain legal advice. *Id.* at 9. Harjo maintains that the settlement matrix is relevant to her claims, "because it sets out policies to govern settlement" of civil forfeiture claims whose program Harjo alleges City officials to have "an impermissible financial incentive either to not settle at all or to settle on terms that are less favorable to vehicle owners." *Id.* at 10.

The Court reviewed the parties' submissions and determined that it could not make a decision without viewing the document itself as to whether it was subject to attorney-client privilege or the work product doctrine, and ordered the City to submit the document for *in camera* review within ten days of the order, on February 23, 2018. (Doc. 89). The City submitted the document to chambers as directed, on February 28, 2018. (Doc. 90). The Court then reviewed

the document outside of counsel's presence, and has made a determination based upon its review.

## **LEGAL STANDARD FOR DISCOVERY**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Parties may request the production of documents pursuant to Rule 34 that are within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). A party objecting to a request for production must also "state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). However, a party may withhold certain material based on a claim of privilege or work product protection.

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) Expressly make the claim; and
> (ii) Describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). A party may move to compel the response to a request for production under Rule 34 if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Because this case, and specifically the issue relevant to Plaintiff's motion to compel, involve a claim for deprivation of due process rights under the Fourteenth Amendment of the U.S. Constitution,[1] federal common law regarding privilege applies. Fed. R. Evid. 501; *see Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1243 (D. Wyo. 2016) (slip op.), *reconsideration denied*, No. 14-CV-45-ABJ, 2016 WL 8453415 (D. Wyo. July 1, 2016).

## ANALYSIS

### I. The settlement matrix is not attorney-client privileged.

Defendant City of Albuquerque argues that the settlement matrix is either subject to the attorney-client privilege as a communication from the City Attorney to the City staff as the asserted client, or the work product doctrine as a document that was created in anticipation of litigation. Analysis into whether a communication falls within the attorney-client privilege precedes the inquiry into whether the work-product doctrine applies. *See S.E.C. v. Goldstone*, 301 F.R.D. 593, 651 (D.N.M. 2014) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981)). The Court will therefore first consider whether the settlement matrix is subject to the attorney-client privilege before assessing whether it falls under the work product doctrine.

Attorney-client privilege is the oldest privilege protecting confidential communications between a lawyer and her client known to common law. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,* 697 F.2d 277, 278 (10th

---

[1] On March 30, 2018, presiding District Judge James O. Browning dismissed two of Plaintiff's due process claims, to wit: that funding the City's vehicle forfeiture program with forfeiture proceeds categorically violates substantive due process, and that the mere imposition of fees violates procedural due process. *See* Memorandum Opinion and Order [92]. Three other due process claims survive: substantive claims based upon a correlation between forfeiture revenues and the salaries of forfeiture officials, *id.* at 63-65, and upon officials' personal use of seized vehicles, *id.* at 66; and a procedural claim based upon the program requirement that vehicle owners prove their own innocence to prevent a state court forfeiture proceeding, *id.* at 65-72. The discovery sought is relevant to the first of these surviving claims.

5

Cir.1983) (internal quotation omitted). Its purpose is to encourage full and frank communications between an attorney and her client in the public interest of administering justice. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010).

"In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (internal citations omitted); *see also*, *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) ("Although this description of the attorney-client privilege suggests the privilege only applies one way, operating to protect the client's communications to a lawyer, it is generally also recognized that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client.") (internal quotation omitted). In addition, the mere fact that an attorney was involved in a communication does not render the communication privileged. *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (quoting *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550–51 (10th Cir.1995)).

The burden of proving that the attorney-client privilege applies to a particular communication rests on the party asserting the privilege. *In re Grand Jury Proceedings*, 616 F.3d at 1183; *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records*, 697 F.2d 277, 279 (10th Cir. 1983). The party asserting the privilege must prove the privilege exists as to specific questions or documents, rather than making a blanket assertion. *In re Grand Jury Proceedings*, 616 F.3d at 1183. The privilege must be strictly constructed and "accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal quotations and citations

omitted); *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 399 (D. Colo. 1992) ("The privilege is to be strictly construed. It is to be extended no more broadly than necessary to effectuate its purpose.") (internal citations omitted).

"Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011); *see also*, *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("The privilege also protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client. In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.") (internal quotations and cited material omitted). However, government agency attorneys sometimes wear more than one hat, sometimes as an administrator or regulator, as well as acting in a legal capacity. *Wyoming v. U.S. Dep't of Agr.*, 239 F. Supp. 2d 1219, 1229 (D. Wyo. 2002), *vacated on other grounds*, 414 F.3d 1207 (10th Cir. 2005). When a government attorney ceases to function as an attorney and operates as a regulator or administrator, the attorney-client privilege will not apply. *Id.* In addition, a communication within a governmental agency will be considered confidential only "if the documents in question were circulated among those agency employees who are authorized to speak on the matter dealt with in the documents; if circulated to a larger group of individuals, the privilege does not apply because the agency did not maintain the confidentiality of the information." *Id.* at 1230 (citing *Lacefield v. United States,* No. 92–N–1680, 1993 WL 268392, *3 (D.Colo. March 10, 1993), 1993 U.S. Dist. LEXIS 4521, *9).

Defendant emphasizes that the City Attorney drafted the settlement matrix in its argument that the attorney-client privilege applies. Defendant also argues that "if the City or City

staff sought legal advice from the City Attorney's Office in connection with forfeiture hearings and the settlement of forfeiture litigation, and the hearing matrix was generated as a result, it is privileged." (Doc. 47 at 10). Defendant points to the Deposition of Donovan Rivera to support its contention that there is an attorney-client relationship between the City Attorney's Office and the Albuquerque Police Department staff who utilize the settlement matrix. *See* (Doc. 45-7 at 39:1-10) (Q: "Do you know why the attorneys would be calling you with these kinds of questions rather than the – their supervisors from the City Attorney's Office?" A. "Because I'm the client for the City Attorneys, so they would probably feel they need to ask the client, you know, 'Would you be happy or okay if I did this?'"). The City would be correct that the City Attorneys and the City officials who received the settlement matrix have an attorney-client relationship but only to the extent that the City Attorneys were acting in their legal capacity when drafting the settlement matrix, and to the extent the matrix only shared confidential communications with those authorized to speak to the matter. According to the evidence presented by Harjo, the City Attorneys and Lieutenant Donovan Rivera are the only parties who have access to the settlement matrix. (Doc. 45-7 at 40:20-24). However, the question still remains as to whether the City Attorneys were acting in their legal capacity.

While Defendant argues that the answer to the question of whether the "matrix was generated as a result of the City or its employees seeking advice from the City Attorney's Office as to the litigation and settlement of forfeiture litigation" is in the "affirmative," it does not provide any evidence supporting this conclusion. Likewise, Defendant's contention that the fact that the settlement matrix was created by an attorney causes it to fall within the attorney-client privilege is a fallacy. An attorney's mere authorship of a document does not transform the document into a confidential communication with a client that relates to legal advice or strategy.

8

*See United States v. Johnston*, 146 F.3d at 794. Moreover, the settlement matrix, as a document that governs the factors the City takes into consideration when making settlement offers in civil forfeiture cases, appears to have been created in the City Attorneys' administrative or regulatory capacity, and not their legal capacity.

In light of the strict construction of the attorney-client privilege, the Court finds that the City has not met its burden in proving that the settlement matrix is subject to the attorney-client privilege. The settlement matrix does not convey a confidential communication between the City Attorney acting within his legal capacity and government agents acting as clients. Instead, the matrix conveys the administrative/regulatory aspect of civil forfeiture settlement proceedings, and was therefore not created for the purpose of conveying legal strategy. As such, the settlement matrix is not privileged as an attorney-client communication.

## II.     **The settlement matrix is not subject to the work product doctrine.**

The City argues that the matrix is subject to the work product doctrine because it was "specifically prepared to instruct staff assigned to forfeiture claims how to respond to specific scenarios *during* the litigation of a forfeiture action," and is therefore subject to the work product doctrine. (Doc. 47 at 4) (quoting Doc. 45-6 at 4) (emphasis in original). However, Plaintiff argues that the work product doctrine does not apply, because the "matrix does not reveal any attorney's thoughts about a particular case, as it articulates general policy to be followed in broad categories of cases. And the matrix does not discuss any procedural or substantive legal issues." (Doc. 45 at 9).

The work product doctrine was established with the recognition that an attorney must simultaneously work to advance justice as an officer of the court while zealously advocating and protecting the rightful interests of her client. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). In

9

protecting her client's interests, an attorney must be granted a certain level of privacy that allows her to "assemble information, sift what [s]he considers to be the relevant from the irrelevant facts, prepare h[er] legal theories and plan h[er] strategy without undue and needless interference." *Id.* at 511. Therefore, the work product doctrine protects a lawyer's work from being disclosed to other parties, including her "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and [in] countless other tangible and intangible ways." *Id*. However, not everything touched by an attorney is privileged by the work product doctrine: "[w]here relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.*

The work product doctrine was later codified in the Federal Rules of Civil Procedure. Under Rule 26(b)(3)(A), a party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A) (2017). However, a party may discover such documents if: "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* In addition, the Rule also provides that if the Court compels any disclosure of work product material, it must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B).

While the privilege granted under the work product doctrine is broader in scope and reach than the attorney-client privilege, it is "intended only to guard against divulging the attorney's

strategies and legal impressions." *S.E.C. v. Goldstone*, 301 F.R.D. 593, 651 (D.N.M. 2014) (Browning, J.) (quoting *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995)). "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006); *see* Fed. R. Civ. P. 26(b)(3)(A); *see also*, *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) ("[U]nlike ordinary work product, opinion work product [cannot] be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship…. [O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") The work product doctrine also "does not protect materials prepared in the 'ordinary course of business,'" such as factual investigations conducted by an attorney acting as an investigator. *Martensen v. Koch*, 301 F.R.D. 562, 572 (D. Colo. 2014) (quoting *Western Nat'l Bank v. Employers Ins. of Wausau,* 109 F.R.D. 55, 57 (D.Colo.1985)). The focus for the applicability of the work product doctrine is whether the document in question was created with the 'motivating purpose' of aiding in litigation or possible future litigation. *S.E.C. v. Goldstone*, 301 F.R.D. 593 at 651. "Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*; *Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004) (Browning, J.).

Plaintiff relies on two work product cases outside the Tenth Circuit discussing exemptions to FOIA requests:[2] *Judicial Watch v. Dept. of Homeland Security*, 926 F. Supp. 2d

---

[2] While FOIA is irrelevant to this case, the exemption at issue in the cases cited by Plaintiff and Defendant is Exemption 5 of FOIA. 5 U.S.C. § 552(b)(5). "'Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5,' the privilege being that enjoyed in the context of discovery in civil litigation. F.T.C. v. Grolier Inc., 462 U.S. 19, 23, (1983) (quoting *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 154, 154-5,

121 (D.D.C. 2013) and *Jordan v. Dept. of Justice*, 591 F.2d 753 (D.C. Cir. 1978). Plaintiff argues that these cases support their contention that documents categorized as policy guidelines, even in the context of prosecuting a criminal or immigration case, are not created in anticipation of litigation. (Doc. 45 at 9-11). Defendant, on the other hand, argues that "[m]aterial may be protected by the work-product doctrine even if it relates to a decision whether or not to prosecute a case or whether to settle a case," citing, *inter alia*, *Cities Serv. Co. v. Fed. Trade Comm'n*, 627 F.Supp. 827, 832 (D.D.C. 1984). (Doc. 47 at 7). In comparing Plaintiff's and Defendant's cases, however, the same principle emerges: documents that are created with an eye toward specific litigation, which reflects an attorney's mental impressions of what she believes to be significant in the litigation/settlement strategy, are protected by the work product doctrine. *Cities Serv. Co.*, 627 F.Supp. at 835 ("[A]n important part of what is protected by the privilege for attorney work-product is the attorney's consideration and weighing of facts," and therefore "material which might disclose an attorney's appraisal of factual evidence is attorney work-product excepted….") (quoting *Mervin v. FTC*, 591 F.2d 821, 826 (D.C. Cir. 1978). On the other hand, documents that are prepared to instruct governmental agents generally how to handle categories of litigation are not protected by the work product doctrine. *See Judicial Watch v. Dept. of Homeland Security*, 926 F. Supp. 2d 121, 142-3 (D.D.C. 2013) (finding that memoranda providing general standards to instruct ICE staff attorneys whether to exercise prosecutorial discretion in specific categories of cases were not created in anticipation of litigation "in the way the work-product doctrine demands, as there is no indication that the document includes the mental impressions, conclusions, opinions, or legal theories" of any attorney "relevant to any specific, ongoing or prospective case or cases"); *Jordan v. Dept. of Justice*, 591 F.2d 753 (D.C. Cir. 1978) (finding

---

(1975) and citing H.R.Rep. No. 1497, p. 10; S.Rep. No. 813, p. 2). Therefore, the cases discussing Exemption 5 are relevant to this case because they discuss the application of the work product doctrine in civil litigation.

that a manual and guidelines that instruct Government lawyers whether or not to bring individual criminal defendants to trial "do not relate to the conduct of either ongoing or prospective trials; they do not include factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any ongoing or prospective trial."). The Court is persuaded by the authority cited by the parties to the effect that documents that do not disclose an attorney's appraisal of factual evidence relating to the conduct of either ongoing or prospective trials are not protected by the work-product doctrine.

The settlement matrix was not made in anticipation of a particular ongoing or prospective trial. Instead, it was created as a guideline for government officials negotiating settlements with parties whose vehicles have been subjected to civil forfeiture. As such, it was created in the ordinary course of business of the City's operation of the DWI forfeiture program. Upon *in camera* review, the Court has determined that the settlement matrix provides settlement amounts in fees and days of forfeiture to be applied in categories of prospective forfeiture cases based on then-pending charges and the driver's quantified history of DWI arrests or convictions. The settlement matrix thus acts as a policy guideline to apply in generalized litigation rather than in anticipation of any one particularized case. In addition, while the matrix gives the City Attorney's assessment of settlement of forfeiture litigation, it does not give the attorney's strategies and legal impressions of a particular case. As such, the work product doctrine does not apply to the settlement matrix.

### III. Harjo has demonstrated a substantial need for the information in the settlement matrix, and cannot, without undue hardship, obtain its substantial equivalent by other means.

Even if the settlement matrix is subject to the work product privilege, the inquiry does not end there. Under Rule 26(b)(3), work product material may be discovered if it is "otherwise discoverable under Rule 26(b)(1); and…the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).

#### A. The settlement matrix is relevant to Plaintiff's claims.

Harjo argues that the settlement matrix is relevant to her claims because she "anticipates that analysis of the factors included (or not included) in the matrix will help to substantiate Plaintiff's claim that the settlement process is warped by the City's financial incentive. And Plaintiff also anticipates that the matrix will show that city attorneys exercise a measure of discretion in the settlement process that can be twisted by a financial incentive." (Doc. 45 at 6). The City, in turn, argues that the settlement matrix is not relevant to her claims because those claims involve the City's financial incentives to settle prior to the hearing, but the settlement matrix "instructs staff how to respond to scenarios *during* the litigation of a forfeiture action." (Doc. 47 at 8-9) (quoting Doc. 45-6 at 4) (emphasis in original). The City's interpretation of Plaintiff's claims is far too narrow in light of the broad scope of discovery under the federal rules. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("[T]he scope of discovery under the federal rules is broad and…'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The settlement matrix is relevant

to the settlement of civil forfeiture claims at issue in Plaintiff's complaint, regardless of the timing when settlement occurs.

### B. Plaintiff cannot obtain the substantial equivalent of the settlement matrix by alternative means without undue hardship.

Harjo argues that she has a substantial need for the material because "her claims relate, in significant part, to the settlement of forfeiture actions, and the matrix sets forth the policies and procedures that govern settlement." (Doc. 49 at 8). She alleges in her Complaint that "[o]n information and belief, revenues from auctions of forfeited vehicles and settlement agreements with owners of seized vehicles make up close to or even more than 100% of the forfeiture program's budget," (Doc. 1-1 at ¶ 15), including the salaries of the employees administering the DWI forfeiture program, which "creates a serious appearance of impropriety, as well as a direct financial incentive for city officials to seize property even in marginal cases." (*Id.* at ¶ 17). The settlement matrix is highly relevant to these claims, because it provides insight into the factors used in deciding to settle certain cases. Harjo has demonstrated a substantial need to discover the settlement matrix to assess its contention that the City's alleged improper incentive against the guidelines the City uses to process its forfeiture settlements.

Harjo cannot obtain the substantial equivalent of the settlement matrix by alternative means without undue hardship. Although the City argues that "Plaintiff could [] examine the public records and note the circumstances present in cases that were settled," (Doc. 47 at 9), Harjo counters that the City's proposed method of reverse-engineering the settlement matrix would be impossible because Harjo cannot access the factual details of each case and the City has not produced the settlement agreements for her to complete the reverse engineering scheme the City proposes. (Doc. 49 at 8). The Court agrees with Harjo. The City's proposal of scouring documents she does not have access to and guessing the factors that the City used to formulate

its settlement offer places an undue hardship on Harjo. Therefore, even if the settlement matrix were subject to the work product doctrine, it is still discoverable under Fed. R. Civ. P. 26(b)(3). Harjo argues that the settlement matrix is relevant to her claims because she "anticipates that analysis of the factors included (or not included) in the matrix will help to substantiate Plaintiff's claim that the settlement process is warped by the City's financial incentive. And Plaintiff also anticipates that the matrix will show that city attorneys exercise a measure of discretion in the settlement process that can be twisted by a financial incentive." (Doc. 45 at 6). The City, in turn, argues that the settlement matrix is not relevant to her claims because those claims involve the City's financial incentives to settle prior to the hearing, but the settlement matrix "instructs staff how to respond to scenarios *during* the litigation of a forfeiture action." (Doc. 47 at 8-9) (emphasis in original). The City's interpretation of Plaintiff's claims is far too narrow in light of the broad scope of discovery under the federal rules. *Gomez v. Martin Marietta Corp.*, 50 F.3d at 1520. The settlement matrix is relevant to the settlement of civil forfeiture claims at issue in Plaintiff's complaint, regardless of the timing when settlement occurs.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (Doc. 45) is granted. Within fourteen (14) days of this Order, Defendant City of Albuquerque must produce to Plaintiff Arlene Harjo the document at issue in the Motion to Compel and submitted to the Court for *in camera* review on February 28, 2018, labeled Defendant's Privileged DWI Matrix 000262-270.

JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE